IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Lewis T. Babcock, Judge

Civil Action No. 07-cv-01234 - LTB - CBS

ADT SECURITY SERVICES, INC.,

    Plaintiff,

v.

ENVISION TELEPHONY, INC., d/b/a The Home Depot, a Delaware corporation,

    Defendant.

___

ORDER
___

This case is before me on Defendant Envision Telephony, Inc.'s ("Envision") Motion for Partial Summary Judgment [Doc # 32]. After consideration of the motion and all related pleadings, as well as the case file, I grant the motion in part and deny it in part for the following reasons.

## I. Background

The following facts are undisputed unless otherwise noted. Envision provides call recording and quality management software programs that are used in the call centers of a variety of businesses. Plaintiff ADT Security Services, Inc. ("ADT") provides electronic security services to a large number of commercial, government, and residential customers. In providing these services, ADT's call monitoring centers receive more that 200,000 calls per day.

In October of 2005, ADT and Envision entered into a Software License Agreement (the "Contract") whereby ADT received a license to use certain Envision recording and quality management and software programs in several of its call monitoring and customer service

centers. Prior to the execution of the Contract, ADT asserts that Envision represented to it that the subject software programs were fully compatible with ADT's existing telephone systems and would meet ADT's requirements for full-time call recording and certain other features. Envision asserts that at no time prior to the execution of the Contract did ADT provide it with a request for a proposal, a desired scope of work, or a written list of desired software functions. Nonetheless, Envision representatives expressed concerns in numerous communications both before and after execution of the contract that Envision did not have the ability to deliver what ADT was expecting.

The Contract provides a limited warranty to ADT "in lieu of all other express and implied warranties, whether oral, written, or implied." Contract, ¶ 9. Under the limited warranty, Envision warranted "that the Software will be free from defects in materials and workmanship under normal use and ... will perform substantially in accordance with [Envision's] published specifications for a period of ninety (90) days from the Installation Date." *Id.* In the event that Envision breached its warranties to ADT, the Contract provides that Envision's "entire liability" and ADT's "exclusive remedy" was, at Envision's option, either "repair or replacement of the Software that does not meet the Limited Warranty ... or ... refund of the License Fee paid." Contract, ¶ 11.

The Contract contains a separate limitation of liability provision that provides

**IN NO EVENT SHALL [ENVISION] BE LIABLE FOR SPECIAL, INCIDENTAL, CONSEQUENTIAL, INDIRECT, PUNITIVE OR OTHER SIMILAR DAMAGES.... FURTHERMORE, [ENVISION IS NOT] RESPONSIBLE FOR LOST PROFITS OR REVENUE, LOSS OF USE OF SOFTWARE, LOSS OF DATA, COST OF RECREATING LOST DATA [OR] THE COST OF ANY SUBSTITUTE PROGRAM OR EQUIPMENT. IN ANY CASE, [ENVISION'S] ENTIRE LIABILITY UNDER ANY PROVISION OF THIS AGREEMENT SHALL BE LIMITED TO THE**

2

**AMOUNT ACTUALLY PAID BY [ADT].**

Contract, ¶ 12 (emphasis in original).

Shortly after execution of the Contract, Envision began installing hardware and software at certain ADT locations. By May of 2006, installation had been completed at a number of locations but was postponed or abandoned at ADT's Aurora, Colorado call center as a result of integration problems. ADT asserts that full functionality of the Envision software was never achieved at any call center notwithstanding the completion of some installations. Envision acknowledges that ADT requested changes to the existing interface and functionality of its software but characterizes these requests as largely personal preferences and new feature requests as opposed to requests for changes required under the Contract.

In June of 2006, ADT sent Envision a "Performance Improvement Plan" ("PIP"). The PIP notes problems with the installation of Envision's software at some ADT sites and devotes several pages to detailing "items required for improvement." The PIP provides that ADT will pursue "termination upon Envision's demonstration of a lack of commitment to the [items required for improvement] and their expectations and measurements." In fact, shortly after providing the PIP to Envision, ADT began talking to another vendor about providing the same support services as Envision.

Envision responded to the PIP via a letter dated June 27, 2006 from its CEO, Rodney Kuhn. Kuhn characterized the issues identified by ADT as either "[s]oftware defects that need to be corrected under warranty and maintenance" or "[f]eature enhancement requests which are not current features of [Envision's] product but that ADT would like to have." Kuhn acknowledged Envision's obligation to address the former category of issues only. Kuhn also identified

3

software features that had already been enhanced or developed for ADT at Envision's expense that were not part of the Contract.

After receiving Kuhn's response to the PIP, ADT decided to terminate the Contract. ADT notified Envision of this decision a few months later by letter dated September 5, 2006. The September 5, 2006 letter states that the parties "should now determine an appropriate termination of [their] relationship." In this regard, ADT proposed that Envision refund the $1,085,842.64 amounts that ADT had already paid to Envision and cancel all outstanding invoices. ADT further proposed that it would assume the travel and expense charges that had been invoiced to ADT. Envision did not accept ADT's proposal.

Prior to the termination of the Contract, Envision had shipped $967,345 worth of hardware to multiple ADT sites. ADT paid $547,385 of this amount leaving an outstanding balance of approximately $419,960. ADT remains in possession of Envision's hardware.

On June 13, 2007, ADT filed this case against Envision. ADT's Complaint states claims against Envision for breach of contract/failure of essential purpose of limited remedy; fraudulent inducement and negligent misrepresentation; fraudulent concealment and/or inducement; and violation of the Colorado Consumer protection Act (the "CCPA"). Envision has outstanding counterclaims for breach of contract and unjust enrichment. By its summary judgment motion, Envision seeks to dismiss ADT's claim under the CCPA and to limit the damages recoverable by ADT on its remaining claims.

## II. Standard for Review

The very purpose of a summary judgment motion under Fed. R. Civ. P. 56 is to assess whether trial is necessary. *White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Rule 56

4

provides that summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The non-moving party has the burden of showing that there are issues of material fact to be determined. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A party seeking summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, interrogatories, and admissions on file together with affidavits, if any, which it believes demonstrate the absence of genuine issues for trial. *Celotex*, 477 U.S. at 323; *Mares v. ConAgra Poultry Co., Inc.*, 971 F.2d 492, 494 (10th Cir. 1992). Once a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried. *Otteson v. U.S.*, 622 F.2d 516, 519 (10th Cir. 1980); Fed.R.Civ.P. 56(e). These specific facts may be shown "by any of the kinds of evidentiary materials listed in Rule 56(c), except the pleadings themselves." *Celotex*, 477 U.S. at 324.

If a reasonable juror could not return a verdict for the non-moving party, summary judgment is proper and there is no need for a trial. *Celotex*, 477 U.S. at 323. The operative inquiry is whether, based on all documents submitted, reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). However, summary judgment should not enter if, viewing the evidence in a light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor, a reasonable jury could return a verdict for that party.

*Anderson Liberty Lobby, Inc.*, 477 U.S. at 252; *Mares*, 971 F.2d at 494.

### III.  Analysis

**A.  ADT's Claim under the CCPA**

To prevail on a claim under the CCPA, a plaintiff must establish that a defendant's deceptive trade practice significantly impacts the public as actual or potential consumers of the defendant's goods, services, or property.  *Hall v. Walter,* 969 P.2d 224, 235 (Colo. 1998).  Some of the factors relevant to this element of a CCPA claim are "the number of consumers directly affected by the challenged practice, the relative sophistication and bargaining power of the consumers affected by the challenged practice, and evidence that the challenged practice previously has impacted other consumers of has significant potential to do so in the future." *Martinez v. Lewis,* 969 P.2d 213, 222 (Colo. 1998).

Envision argues that ADT's claim under the CCPA must fail because ADT cannot prove that Envision committed a deceptive trade practice that significantly impacts the public as actual or potential consumers of Envision's products and services.  I agree.

In response to an interrogatory regarding the public impact of Envision's alleged practices, ADT stated as follows:

> Envision's software was to serve two purposes; full-time liability recording of all calls and quality assurance and training of ADT's line operators. .... [I]t is mission critical that <u>all</u> of ADT's calls be recorded, from beginning to end, so that its operators can be trained in proper procedures and, where necessary, corrected where they may have made an error.  It is also mission critical that ADT have ... recordings of all calls for liability purposes and ... to assist law enforcement or other investigative agencies in the investigation of criminal activity. ....

> ADT does not allege that its customers purchased any goods or services directly from [Envision]. Rather, ADT alleges that its customers were impacted as potential customer's of Envision's goods or services through their daily interactions with ADT's call center personnel. The failure of Envision's software and hardware to perform as required by ADT had a direct impact on the performance of ADT's call center personnel; such failure can, and does, impact each and every ADT customer who relies on ADT for protection of their life and property[.] As such, ADT's customer were potential customers of Envision.

It is apparent from this response, which ADT cited in its response to Envision's motion, that there was only a possibility that some of ADT's customers would be indirectly impacted by ADT's use of Envision's software and hardware. Specifically, ADT's customers would be impacted by the alleged failure of Envision's products if the software failed to record an entire call involving operator error so that ADT was unable to fully train that operator and the same error was made in a subsequent phone call to the customer's detriment.

ADT attempts to establish that this tenuous link between Envision's allegedly deceptive trade practices and the public is nonetheless sufficient to state a claim under the CCPA based on my decision in *Fiberglass Component Prod., Inc. v. Reichhold Chem., Inc.,* 983 F. Supp. 948 (D. Colo. 1997). *Reichhold* involved a claim under the CCPA by a corporate buyer of resin that was used in the production of air conditioning units that were installed in buses and rail cars as part of the mass transit systems of major cities and that did not meet specifications designed to protect passengers in the event of a fire. In denying the defendant's motion for summary judgment on this claim, I concluded that plaintiffs' claim was within the "zone of interests" of the CCPA based on the potential impact on the general public. *Id.* at 962. Even assuming that the facts of *Reichhold* are analagous to those present here, that case was decided prior to *Hall* and *Martinez* under a different standard than that which the Colorado Supreme Court articulated in those cases and continues to apply to CCPA claims. *See e.g. Crowe v. Tull,* 126 P.3d 196, 201

(Colo. 2006). The analysis utilized in *Reichhold* is therefore largely irrelevant to ADT's claim under the CCPA.

Turning back to the appropriate analysis of ADT's CCPA claim under the standards articulated in *Hall* and *Martinez*, there is no evidence that Envision marketed the subject hardware and software to the general public as consumers. *Compare Hall*, 969 P.2d at 235 ("[T]here is no dispute that [defendants']deceptive trade practices implicated the public as consumers because the misrepresentations were directed to the market generally, taking the form of widespread advertisement and deception of actual and prospective purchasers."). Rather, Envision's alleged misrepresentations occurred strictly in the context of its negotiated contractual agreement with ADT and must be analyzed in the context of ADT's unique service requirements. ADT was therefore the sole consumer of Envision's goods and services. *Martinez v. Lewis,* 969 P.2d 213, 222 (Colo. 1998). As such, this presents a situation where a single sophisticated consumer with substantial resources was impacted by Envision's alleged deceptive trade practices with little likelihood that other consumers will be similarly impacted. ADT is therefore unable to prove that Envision committed a deceptive trade practice that significantly impacts the public as actual or potential consumers of Envision's products and services, and its claim under the CCPA fails as a matter of law.

## B. ADT's Claim for Consequential Damages

Envision argues that ADT's claim for consequential damages based on time its employees allegedly spent addressing issues that arose during the installation of Envision's software is precluded under the Contract's Limitation of Liability provision set forth in paragraph 12 of the Contract. The parties agree that under the terms of the Contract, this issue is

governed by Washington law. *See also* Contract, ¶ 13.

Under Washington law, a contractual limitation of consequential damages in a commercial setting "is valid unless it is established that the limitation is unconscionable." RCW 62A.2-719(3). Whether such a limitation, or exclusionary clause, is unconscionable is a question of law. *American Nursery Products, Inc. v. Indian Wells Orchards,* 797 P.2d 477, 481 (Wash. 1990). "Exclusionary clauses in purely commercial transactions ... are prima facie conscionable and the burden of establishing unconscionability is on the party attacking it." *Id.* Unconscionability is determined under the "totality of the circumstances," including "(1) the manner in which the parties entered into the contract, (2) whether the parties had a reasonable opportunity to understand the terms of the contract, and (3) whether the important terms were hidden in a maze of fine print." *Id.*

Here, the relevant factors under Washington law all weigh strongly against a finding that the Contract's Limitation of Liability provision was unconscionable. In particular, the limitation on consequential damages was prominently displayed, and the contract terms were agreed to by two sophisticated business entities. The Contract's exclusion of consequential damages is therefore valid under RCW 62A.2-719(3).

ADT argues that conscionable exclusionary clauses are nonetheless unenforceable under Washington law if they fail in their essential purpose. More specifically, ADT argues that the Contract's Remedies provision, which is separate from the Contract's Limitation of Liability provision that precludes the recovery of consequential damages, failed in its essential purpose to give ADT the substantial benefit of its bargain by limiting the available remedies to repair or replacement of its products or refund of the license fee paid and that the Contract's Limitation of

Liability provision is therefore unenforceable.

ADT cites *Cox v. Lewiston Grain Growers, Inc.,* 936 P.2d 1191, 1198 (Wash App. 1997), for the general principle that conscionable exclusionary clauses are unenforceable if they fail in their essential purpose. The genesis of this principle is RCW 62A.2-719(2), which provides that "[w]here circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this Title." In *Cox*, the appellate court cited *American Nursery Products* for the extension of RCW 62A.2-719(2) to conscionable exclusionary clauses. In *American Nursery Products,* however, the Washington Supreme Court noted that it had not yet addressed the issue of whether the failure of a limited remedy vitiates the validity of a separate conscionable exclusionary clause and that it need not do so in the context of that case. *American Nursery Products,* 797 P.2d at 484.

In addressing this issue under Washington law, the Sixth Circuit concluded that RCW 62A.2-719(2) did not govern the recovery of consequential damages, which were excluded by a separate contractual provision from that which limited available remedies to repair, replacement, or rescission. *Lewis Refrig Co. v. Sawyer Fruit, Veg. & Cold Storage Co.,* 709 F.2d 427, 434 (6th Cir. 1983). Rather, the Sixth Circuit concluded that RCW 62A.2-719(3), which expressly addresses contractual limitations on consequential damages, was the sole governing provision regarding such damages. *Id.* Thus, absent a finding of unconscionability, the contract's exclusion of consequential damages was enforceable notwithstanding any failure of the essential purpose of the exclusive repair and rescission remedy.

The Sixth Circuit based this conclusion, in large part, on the basic principle of statutory construction that the particular governs over the general. *See NISH v. Rumsfeld,* 348 F.3d 1263, 1272 (10th Cir. 2003). I find this reasoning persuasive. Additionally, I note that a number of other courts that have considered analogous statutory provisions under the laws of other states have concluded that an exclusion of consequential damages is valid even if a separate limited remedy fails of its essential purpose. *See e.g.McNally Wellman, Co. v. New York State Elec. & Gas Co.,* 63 F.3d 1188, 1197 (2nd Cir. 1995) ("Under New York law, ... the failure of a limited remedy does not render ineffective all other limitations of liability."). This conclusion is consistent with the recognition that Washington courts have given to the importance of freedom of contract in commercial settings. *See e.g. Watson v. Ingram,* 881 P.2d 247, 250 (Wash. 1994) ("As this court has previously explained, '[w]e are loathe to interfere with the rights of the parties to contract as they please among themselves....'") (citation omitted). I therefore conclude that Washington courts are likely to find that the failure of a limited remedy does not invalidate a separate exclusion of consequential damages that is not unconscionable.

ADT next argues that the Contract's exclusion of consequential damages is invalid under the "*Berg* rule" derived from *Berg v. Stromme,* 484 P.2d 380 (Wash. 1971). In *Berg*, the Washington Supreme Court held that in order for a disclaimer of warranties to be valid in the consumer sales context it must be "explicitly negotiated between buyer and seller" and the excluded remedies must be "set forth with particularity." *Id.* at 386. These requirements have been extended to commercial transactions but only to the extent necessary to prevent "unfair surprise" to the detriment of one of the parties. *American Nursery Products,* 797 P.2d at 481. Thus, Washington courts have refused to apply the *Berg* requirements "to negotiations between

11

competent persons dealing at arm's length, with no claim of an adhesion contract, when the contract contains a specific disclaimer and when the contract language is clear." *Id.* at 482. The Contract's Limitation of Liability provision and surrounding circumstances fall squarely within this exception to the *Berg* requirements, and I need not give them any further consideration.

In conclusion then, because the Contract's exclusion of consequential damages is valid and enforceable, ADT is precluded from recovering damages based on time its employees spent addressing issues that arose during the installation of Envision's software.

## C. Envision's Entitlement to an Offset

Envision argues that it is entitled to an offset of $419,960 in outstanding invoices billed to ADT for hardware that Envision purchased on ADT's behalf and that remains in ADT's possession. This argument is predicated on Envision's assertion that the hardware, which ADT concedes had no problems, was treated separately from the software under the Contract and is therefore subject to separate remedies. As supporting evidence, Envision cites provisions in the Contract that reference the software only. There is, however, no separate contract regarding the hardware, and Envision had failed to identify any provisions in the Contract which clearly set forth the parties' agreement regarding this component of their agreement. Additionally, the project manager charged with securing a call recording system for ADT states in her affidavit that the hardware and software components of the parties' agreement were inseparable because the hardware had no value to ADT independent of working software from Envision. Under these circumstances, there is a triable issue regarding whether the hardware and software may be treated separately under the Contract. It follows that there is a triable issue as to whether ADT effectively and timely rejected the hardware supplied by Envision when it rejected the software

installed by Envision. Envision is therefore not entitled to judgment as a matter of law that any damages suffered by ADT must be offset by the full amount of outstanding invoices billed to ADT for hardware that Envision purchased on ADT's behalf.

For the reasons set forth above, IT IS HEREBY ORDERED that

1. Envision's Motion for Partial Summary Judgment [Doc # 32] is GRANTED IN PART and DENIED IN PART;

2. ADT's claim against Envision for violation of the CCPA (Fourth Claim for Relief) is hereby DISMISSED WITH PREJUDICE;

3. ADT may not recover consequential damages from Envision based on time its employees addressing issues that arose during the installation of Envision's software; and

4. In all other respects, Envision's Motion for Partial Summary Judgment is DENIED.


Dated: November   21  , 2008 in Denver, Colorado.

BY THE COURT:

  s/Lewis T. Babcock
LEWIS T. BABCOCK, JUDGE